**In the Matter of Carl Thomas TEEGARDEN, Debtor.**

**No. 70-6542.**

United States District Court,
E. D. Kentucky,
Lexington Division.

Aug. 2, 1971.

Daniel W. Goodman, Georgetown, Ky., for debtor.

Sidney White, Trustee, Gardner L. Turner, Sturgill, Moreland & Turner, Lexington, Ky., for petitioning creditor General Motors Acceptance Corp.

## MEMORANDUM

SWINFORD, District Judge.

This action is before the court on a petition for review of an order of the Referee in Bankruptcy entered on April 16, 1971, denying the petition of General Motors Acceptance Corporation for reclamation of a 1970 Rambler automobile purchased by the debtor, Carl Thomas Teegarden.

The basic issues raised by the petition for review are whether a wage earner's plan may be confirmed despite rejection by a secured creditor, and whether the rejecting creditor may be denied the right to reclaim its security. The Referee has held in the affirmative on both of these questions and this court hereby affirms his ruling.

The objective of Chapter 13 of the Bankruptcy Act (the chapter which provides for wage earner's plans) is to furnish a method by which persons dependent upon their earnings from personal services can effectuate a program whereby they will be given an extension of time to pay their debts, on the condition that the program is acceptable to a majority of the creditors.

Section 652 of the Act, 11 United States Code § 1052, provides that an application for confirmation of a wage earner's plan may not be filed with the court, unless prior to the conclusion of the hearing on confirmation the plan has been accepted in writing by a majority of the *unsecured creditors* whose claims are *affected* by the plan, and by the *secured creditors* whose claims are *dealt with* by the plan. The creditor in this case has a security interest in the automobile in question. The Referee has concluded, in prior opinions on identical questions, that despite the language in section 652 of the Act (which seems to give any secured creditor whose claim is "dealt with" by the plan a complete veto power over the plan) secured creditors only have a veto power over a wage earner's plan if their claims are adversely affected by the plan. The Referee notes that the Act defines a creditor as the holder of any claim. Section 607 of the Act, 11 United States Code § 1007, states that a creditor shall be deemed to be affected by the plan if his interests are adversely affected. Presumably the term "creditor" in this section refers to both secured and unsecured creditors. If this is the case, then a secured creditor may not exercise (notwithstanding what the language in section 652 states) a veto power unless his claim is adversely affected by the plan. This court agrees with the Referee's interpretation of the above mentioned sections of the Act, as any other construction would give secured creditors unbridled veto power over wage earner's plans which would seem to defeat the whole purpose of Chapter 13 of the Act.

In applying the "adversely affected" standard the Referee determined that the creditor's claim was not so affected, and determined that the wage earner's plan could be confirmed despite the creditor's rejection of it. Accordingly the creditor was denied the right to reclaim the secured property.

There are several cases which hold that a secured creditor in a wage earner's proceeding is either entitled to receive payments in accordance with the terms of the contract creating the debt, or it may veto the plan.

The Referee has asserted in previous rulings that a creditor's right to receive payments in accordance with the terms of the contract is qualified to the extent that the debtor has a superceding

right to reject all executory contracts which are burdensome. Sections 613(1) and 646(6) of the Act, 11 United States Code §§ 1013(1) and 1046(6). If a wage earner's plan states that the debtor has chosen to reject burdensome executory contracts, then, obviously, the creditors who are parties to those contracts do not have a right to receive payments in accordance with the terms of the contracts. The sections in Chapter 13 providing for the rejection of executory contracts must not be construed so narrowly as to render them meaningless. If creditors had an absolute right to receive payments in accordance with the terms of the contract, then there would be no purpose served by wage earner's plans. If debtors could satisfy their debts according to the terms of the contracts creating them, then they would not need the benefits of a wage earner's plan. It could be argued that the contract financing the automobile is no longer in the executory stage. Although this may be true as to the creditor's performance, it is not true as to the debtor's performance, and the Act states that rejection of executory contracts of the debtor is permissible.

Additionally it could be argued on behalf of the creditor that to prevent it from receiving payments in accordance with the terms of the contract creating the debt would be antithetical to the provisions of the Constitution protecting the sanctity of contracts and property rights. This argument overlooks the fact that Congress has the power to regulate property rights and has exercised that power in form of the Bankruptcy Act. The Bankruptcy Act becomes a part of every contract made, whether or not expressly stated in the contract. It is apparently the Referee's opinion that a creditor should not have a veto power over a wage earner's plan unless it can be shown that the plan is violative of due process; that is to say constitutes a taking of property without due process.

 Because there is no evidence that the creditor of the debtor in this case will be denied due process by the plan, and because the creditor cannot claim that it is adversely affected by the plan in view of the fact that it will receive as much as it would under the terms of the contract, and as much as it would if the automobile were reclaimed and resold, it is the opinion of this court that the Referee's ruling is correct. An order affirming the Referee's order entered April 16, 1971, will this day be entered.