**In re Linda BEAVER, Debtor.**

**Bankruptcy No. 79–03046–KZ.**

United States Bankruptcy Court,
S. D. California.

Jan. 30, 1980.

George Ritner, San Diego, Cal., for bankrupt.

Harry Heid, San Diego, Cal., Chapter XIII trustee.

MEMORANDUM OPINION ON ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN NOT FILED IN GOOD FAITH AS REQUIRED BY 11 U.S.C. § 1325(a)(3).

JAMES W. MEYERS, Bankruptcy Judge.

**I**

On November 6, 1979, Ms. Linda Beaver filed her petition seeking protection under Chapter 13 of the United States Bankruptcy Code, and paid the required $60 filing fee. A first meeting of creditors was held on December 12, 1979. Subsequently, on December 26, 1979, a hearing was held before this Court to determine if the plan should be confirmed. This Court determined that the plan should not be confirmed and this opinion is issued to explain that decision.

**II**

**FACTS**

The debtor is an unemployed cashier, who was last employed in April of 1979, when she resided in Illinois. Although she is actively looking for employment, she supports herself and her two small children on $580 a month unemployment compensation, which is scheduled to cease in May of 1980.

The debtor's Chapter 13 statement reflects $955 in personal assets, all of which she would claim as exempt property, and total debts of $3,206, all due to unsecured creditors. Her attorney has previously received a $200 retainer and requests that he be awarded a total fee of $400 to handle this case, the remaining $200 to be paid under the plan as a cost of administration.

Under the plan, creditors would receive one percent of the outstanding indebtedness resulting in the following dividends:

| Creditor | Total Indebtedness | Proposed Payment under Plan |
|---|---|---|
| Methodist Medical Center | $1,233 | $12.33 |
| VISA | 924 | 9.24 |
| Central Illinois Light Company | 342 | 3.42 |
| Wards | 332 | 3.32 |
| Assn. Anesthesiologist, S.C | 150 | 1.50 |
| Ace Ambulance | 92 | .92 |

| Creditor | Total Indebtedness | Proposed Payment under Plan |
|---|---|---|
| Tingliff Pharmacy | 57 | .57 |
| Pleasant Valley Water | 27 | .27 |
| Orthopedic Surgery Group | 27 | .27 |
| R. C. A. Music | 22 | .22 |
| Total Dividends to be paid | | $32.06 |

Under 11 U.S.C. § 1302(e)(1)(B) the Chapter 13 trustee in this district has been directed to levy a 10% charge on all funds he handles to cover his compensation and the other actual expenses of his office. Thus, under the plan Ms. Beaver must pay over to the trustee a grand total of $255.27, of which $200 will be paid to her attorney, $23.21 will be retained by the Chapter 13 trustee and $32.06 will be paid as dividends to creditors. The debtor proposes to pay $50 each month, so that she will be required to make just over five monthly payments to the trustee.

To summarize, in order to accomplish her goals under the plan, the debtor will make over $515 in payments, as follows:

| Costs of Administration | | |
|---|---|---|
| Filing fee | $ 60.00 | ( 11.7%) |
| Fees paid to counsel | 400.00 | ( 77.6%) |
| Retention by trustee | 23.21 | ( 4.5%) |
| | $483.21 | ( 93.8%) |
| Dividends to Creditors | 32.06 | ( 6.2%) |
| Total Payments Required | $515.27 | (100.0%) |

### III

### DISCUSSION

In making the determination as to whether a particular Chapter 13 plan should be confirmed, the Court must consider 11 U.S.C. § 1325(a), which directs that a plan be confirmed if the Court is satisfied that:

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

Of these six general requirements it appears that all are fulfilled except the third and sixth. With regard to the latter it does not appear that this debtor can reasonably be expected to support herself, her two small children, and make even the minimal payments offered here on the meager $580 she is collecting monthly from unemployment insurance. A close review of the budget submitted by the debtor leads this Court to conclude that it is not realistic and the debtor will not be able to make the payments required without depriving herself or her children of the necessities of life.

As to the third requirement of Section 1325(a), that the plan be proposed in good faith, this too concerns the Court for it is doubtful that such a minimal composition plan as proposed here can satisfy this condition. Not surprisingly, given the recent enactment of the Code, there are no reported decisions construing the phrase "good faith" as it is found in Section 1325, nor could the Court find any reported decisions considering the similar wording of the predecessor sections found in the Bankruptcy Act ("Act"). *See* Bankruptcy Act

§§ 651, 656. *See also* 5 *Collier on Bankruptcy*, ¶ 1325.01[2][C] (15th ed.). The legislative history makes no attempt to discuss the contours of the phrase. *See* H.R. Rep.No. 595, 95th Cong., 1st Sess. 412, 430 (1977) U.S.Code Cong. & Admin.News 1978, p. 5963; S.Rep.No. 989, 95th Cong. 1st Sess. 126, 142 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

Nonetheless, the treatment of related sections under the Bankruptcy Act does provide some guidance. Under similar wording found in Section 366 of former Chapter XI, the phrase in question is said to encompass an inquiry into "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] . . . ." 9 *Collier on Bankruptcy* ¶ 9.20 at p. 318 (14th ed.). *See also* 10 *Collier*, ¶ 29.06[6] (14th ed.) (similar discussion of identical wording in the Ch. XIII context); 9 *Collier* ¶ 9.07[6] at p. 1144 (14th ed.) (similar discussion of identical wording found in Ch. XII).

Thus, the standard in like instances under former practice was not reduced to a simple or mechanical formula. It allowed a broad inquiry into the facts of the case and demanded both a flexible and sensitive approach to protecting the interests at stake and the larger goals of the statute. This view also conforms with well settled principles of statutory construction. In this we must always be mindful that the interpretation of a statute should not hinge on an isolated clause or phrase in a particular section, but should consider the whole statute as well as the objects and policy behind its enactment. *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1973). The purpose of Chapter 13 is clear. It is designed to facilitate the adjustment of debts through extension and composition plans proposed by individuals with regular income. *See* 5 *Collier*, ¶ 1300.02 (15th ed.). Most consumer debtors, Congress found, desire to repay their debts rather than liquidate their assets in a straight bankruptcy

proceeding. *See House Report*, at p. 117; *Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc.No. 93–137, 93d Cong., 1st Sess. 157 (1973).

The benefits to the consumer debtor from an orderly repayment of his obligations are manifold. The debtor can retain his property by agreeing to repay his creditors. This protects his credit rating and avoids the stigma unfortunately associated with liquidations. Additionally, as Congress pointed out, Chapter 13 debtors are thereby allowed to retain the pride associated with being able to meet one's obligations in a timely manner. *See House Report*, at p. 118.

It is important to note, however, that the unsecured creditor and his interests were not left unconsidered by Congress. Losses to creditors otherwise accruing in a liquidation were seen as being *significantly* reduced in a Chapter 13 setting. *See House Report*, at p. 118. In this regard, the legislative history makes it quite clear that while 100% composition plans are not mandatory under Chapter 13, "marginal" plans are discouraged. As the Senate Report states:

> As in current law, 100 percent payment plans will be encouraged by the limitation on availability of a subsequent discharge in section 727(a)(8). This kind of plan has provided great self-satisfaction and pride to those debtors who complete them and at the same time effect a maximum return to creditors. . . . It is also necessary to prevent chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor.

*Senate Report*, at p. 13, U.S. Code Cong. & Admin.News, 1978 p. 5799.[1]

As the Senate Report points out, Congress saw fit to discourage the use of marginal repayment plans by certain limitations on the availability of discharges in Section 727. Under this section, a Chapter 7 discharge may not be obtained by a debt-

---

1. The reference to Section 727(a)(8) is incorrect. The citation should be to Section 727(a)(9).

or within an ensuing six year period unless the total payments made under the Chapter 13 plan equalled at least 70% of the aggregate allowed unsecured claims. The plan must also have been proposed in good faith and involved the debtor's "best effort". *See* 11 U.S.C. § 727(a)(9). *See also* 5 *Collier* ¶ 1325.01[2][D][c] (15th ed.).

This Court believes that a plan cannot be considered to have been filed in good faith unless it forwards the basic purposes of Chapter 13. As this Court understands Congressional intent in this regard, a proper Chapter 13 plan must be a meaningful attempt to come to terms with creditors. In this context the requirement of good faith is one meaning more than just simple honesty. Instead, it requires a fundamental fairness in dealing with one's creditors. Without such a requirement, Chapter 13 would be open to any number of potential abuses. Under the Act creditors were protected from mistreatment by the necessity of the plan receiving the acceptances of a majority of the unsecured creditors affected by the plan. *See* Bankruptcy Act § 652(1). That requirement has been eliminated under the Code. *House Report*, at p. 123. Instead Congress has now placed on the Courts the responsibility to insure that fair dealing is accomplished in Chapter 13 proceedings. They achieved this in the comprehensive requisites stated in Section 1325(a), and in particular, in the requirement of a specific finding of good faith before a plan can be confirmed. *See* Lake, *Chapter 13 Under the Code*, 84 Com.L.J. 365, 370 (1979).

In making this determination this Court is not unmindful of Section 1325(a)(4). This clause requires the Court, when confirming a Chapter 13 plan, to determine whether unsecured creditors would receive at least as much as they would if the case were liquidated under the provisions of Chapter 7 of the Code. The debtor here would argue that this is the only requirement in Section 1325(a) dealing with judgment on the adequacy of the payment proposed. This Court cannot agree with this narrow construction, for a marginal plan which satisfied this minimal standard must still comply with the remaining conditions for confirmation. The concept of good faith, as well as the other necessary considerations, must be satisfied independently of a mechanical calculation of liquidation value.

This conclusion is verified when comparison is made between the provisions contained in the various Chapters of the Code. In Chapters 7 and 11, Congress continues the longstanding practice of declaring certain types of debts to be non-dischargeable. Nine specific kinds of debts are listed, including debts for fraud, false pretenses, willful and malicious injury, alimony, child support and student loans. *See* 11 U.S.C. § 523. In Chapter 13, if you make the payments required and complete the plan, virtually all of the above debts will be discharged, except for alimony and child support. *See* 11 U.S.C. § 1328(a). Additionally, Chapter 13 has no time bar as is found in Chapter 7. *See* 11 U.S.C. §§ 727(a)(8), (9) (six year time bar). It would be incredible if Congress, in enacting this comprehensive statutory scheme, had carefully guarded against the discharge of certain classes of debts in two chapters and placed a time bar on the use of Chapter 7, and yet would leave a loophole whereby these restrictions could be effectively torpedoed by a Chapter 13 plan paying a cent or two on the dollar. Surely these plans would be the equivalent of a straight bankruptcy case and must be confined to handling under Chapter 7. Certainly Congress never intended to allow any such abuse by granting *carte blanche* in the use of Chapter 13. Instead, it was anticipated that use of this Chapter would be restricted to those who propose legitimate plans and this intention is embodied in the requirement of good faith.

██ The question presented in this case is whether a plan providing for a one percent dividend to unsecured creditors forwards the purposes of Chapter 13 by operating in a fundamentally fair manner with respect to the creditors concerned. As in all such questions, where the court must weigh the needs of conflicting interests, each case must be resolved on its own particular set of circumstances.

Here the debtor is proposing a repayment to her creditors which amounts to as much as they would receive in a liquidation case as all of her assets appear to qualify as exempt. It is also the best effort that could be expected of someone in Ms. Beaver's circumstances to undertake.[2] On the other hand, the repayment to creditors is only one percent and cannot be held to constitute a meaningful attempt to repay or "adjust" the debts involved. Also, when the dividends are compared to all the payments required of Ms. Beaver we see that they amount to an insignificant 6.2%. In effect the plan proposed is the equivalent of a liquidation under Chapter 7 and as such does not promote the purposes of Chapter 13, but instead tends to belittle them. It has the unfortunate effect of relegating the Chapter 13 trustee into being little more than a collection agent for attorneys fees and other costs of administration.

If this Court were to confirm this plan it would be a distortion of the very purposes that prompted the enactment of Chapter 13 and would mock those many thousands of "poor but honest" wage earners and debtors who fairly deal with their creditors under the Act and under the Code.

### IV

#### CONCLUSIONS

In light of the foregoing, this Court must conclude that the plan submitted by the debtor does not qualify for confirmation under Section 1325(a) as it is not feasible and was not offered in good faith. Accordingly, it cannot be confirmed.

---

**2.** A debtor's best effort is not required to support a finding of good faith. But such a commitment certainly is a factor which should be given great weight in favor of the debtor's proposal. This would be especially so when

faced with a plan proposing less than a 70% payout, as that minimum percentage seems to be preferred by Congress. *See* 11 U.S.C. § 727(a)(9)(B).