**In re Paul Eugene BURRELL,
Debtor–Appellant.**

**Bankruptcy No. 4–79–03262–PH.
No. C–80–0905–WAI.**

United States District Court,
N. D. California.

Aug. 19, 1980.

---

Robert L. Ward, Ward & Rinn, Oakland, Cal., Siegfried Hesse, Oakland, Cal., for debtor-appellant.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

This appeal from a decision of the bankruptcy court addresses the standards for confirmation of a plan for the adjustment of a wage earner's debts under Chapter 13 of the Bankruptcy Act of 1978, 11 U.S.C. §§ 1301–1330.

The debtor has proposed a Chapter 13 plan that would allow his discharge if, within three years, he pays each of his unsecured creditors fifteen cents on each dollar of allowed debt. That amount exceeds what would have been realized under a Chapter 7 liquidation in bankruptcy, 11 U.S.C. §§ 701–766. In the proceedings below, the trustee approved the plan, and no creditor objected, but the bankruptcy court refused to confirm it because the plan failed to provide for "substantial" payment to the unsecured creditors. "Substantial" payment, as interpreted by the bankruptcy court, meant that the debtor had to pay "at least 70% of allowed unsecured claims." *In re Paul Eugene Burrell*, 2 B.R. 650 at 652 (Bkrtcy N.D.Cal., 1980). For the reasons discussed in this opinion, this Court remands the case for further consideration by the bankruptcy court.

The standards governing Chapter 13 plans are set forth in 11 U.S.C. § 1325(a), which provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

The bankruptcy court found that the debtor's plan met "all of the express statutory requirements of confirmation." *Supra*, at 651. Specifically, the court found that the debtor would be able to make all payments under the plan and that he would be able to comply with it, that the unsecured creditors would receive more under the plan than would be available in a Chapter 7 liquidation, and that the plan represented "the debtor's best effort, i. e., that the amount and term of payments are the greatest the debtor can reasonably pay." *Id.* at 651. The court did not *specifically* find that the plan had been proposed in "good faith" within the meaning of § 1325(a)(3).

The court rejected the debtor's plan because it interpreted § 1325(a) to require "substantial" payment of the unsecured claims and to require that the plan represent the debtor's best effort in meeting the claims of creditors. The court interpolated these requirements from 11 U.S.C. § 727(a)(9), which sets forth the six–year bar rule for a Chapter 7 discharge. The six–year bar rule precludes the discharge of a debtor in a straight bankruptcy proceeding if that debtor has obtained a Chapter 13 discharge within the preceding six years unless the latter involved payment of 100% of the allowed unsecured claims or both payment of 70% of those claims and a finding that the plan "was proposed by the debtor in good faith, and was the debtor's best effort." 11 U.S.C. § 727(a)(9)(B). The bankruptcy court read the elements of this exception to the six–year bar into § 1325(a) on the grounds that the structure of Chapter 13 as a whole mandates it:

There is no express, statutory requirement that plans propose substantial payments on unsecured claims, nor any provision of Chapter 13 that defines substantial as being at least 70% of such claims. I have concluded that it is necessary to read such a requirement into [§ 1325(a)] on the basis that failure to do so will frustrate the objectives of Congress and lead to absurd results considering Chapter 13 within the Bankruptcy Code as a whole.

*Supra*, at 651.

The court reasoned that absurd results would follow if a Chapter 13 plan does not provide for substantial payment to unsecured creditors. Each of the stated reasons involves a comparison of Chapter 13 with Chapter 7. In making these comparisons, the court concluded that Congress in expanding the scope of Chapter 13 in 1978 gave the Chapter 13 debtor many advantages denied to the Chapter 7 bankrupt. The Chapter 13 debtor may obtain a discharge even though he has committed acts that would bar discharge under Chapter 7; similarly, he can complete the plan and obtain discharge of particular debts, such as fraud judgments, that are excepted from Chapter 7 discharge. Under the pre–1978 Chapter XIII, the debtor's creditors had the power to reject a plan. After the 1978 revision, however, their assent is no longer required; the court may confirm a plan over their objection. The bankruptcy court concluded that Congress must have intended to restrict the benefits of Chapter 13 to

those cases where the debtor proposes to make substantial payments to his unsecured creditors. Both literally and figuratively, the debtor has to pay a price for the benefits of Chapter 13.

> [[T]he] departures from former Chapter XIII are so striking that one assumes they would only apply in cases in which the plan proposes to pay creditors in full or at least in substantial part and even then only if the plan as proposed is a good faith effort to pay creditors the greatest amount that can reasonably be expected.

*Supra*, at 652. Implicit in the court's reasoning is the fear that a liberal reading of the provisions of Chapter 13 will allow an undeserving debtor unable to make substantial payments to his creditors to circumvent the express limitations of Chapter 7 by allowing that debtor to obtain the broader benefits of Chapter 13 with what should be a Chapter 7 case. In order to harmonize the chapters, the bankruptcy court concluded that a debtor who wishes to avail himself of Chapter 13 will have to make provision for substantial payments to his unsecured creditors, even though those creditors would have received less from the debtor in a straight bankruptcy.

The court found further support for its interpretation in the hardship discharge provision of § 1328(b). Under this section, a debtor may be relieved from his Chapter 13 plan if his failure to complete the payments is "due to circumstances for which the debtor should not justly be held responsible." As the court noted, however, such a debtor obtains only the narrower discharge provided by Chapter 7. Implicitly, the court reasoned that Congress contemplated that the debtor who obtains the broader discharge afforded by § 1328(a) must do something more than the hardship debtor: he must make substantial payments to his unsecured creditors. If a no–payment plan were sanctioned, for example, there would be no need for the hardship discharge provision; such a plan would be completed the moment it is confirmed. "Such a disparity of treatment makes sense only if the section 1328(a) discharge is limited to plans that

are both substantial and represent the debtor's [best] effort." *Supra*, at 652.

The debtor argues that § 1325(a)(4) sets forth the sole test for payments to unsecured creditors. The only issue under this approach is whether the unsecured creditors will receive more under the proposed plan than they would under a Chapter 7 liquidation. If so, the debtor argues, then the introductory language of § 1325–that the court "shall confirm" if the elements of that section have been met–leaves no discretion in the court: it must confirm a plan that satisfies those elements. The debtor contends that imposing a more stringent standard will contravene the intent of Congress to expand the availability of Chapter 13 discharges.

What the debtor's argument overlooks, however, is the requirement of § 1325(a)(3) that the plan be proposed in "good faith". The bankruptcy court's ruling can be interpreted as holding that a plan cannot, as a matter of law, be proposed in good faith unless it satisfies at least 70% of the allowed unsecured claims and represents the debtor's best effort. Viewing the order in this light, the issue is whether § 1325(a)(3) can be read to include the requirements of § 727(a)(9).

The bankruptcy court examined the legislative history of the 1978 Act and concluded:

> Congress intended to encourage full payment Chapter 13 plans and *substantial* partial payment plans. Nothing in the reports suggests any intention on the part of Congress to encourage *nominal* partial payment plans.

*Supra*, at 652. (emphasis in original). While the Chapter 13 legislative history may be limited, it clearly shows that Congress viewed Chapter 13 as an alternative to straight bankruptcy only when the debtor could reasonably have been expected to be able to pay his debts in full or in substantial part. The Senate report stated:

> In theory, the basic purpose of Chapter XIII has been to permit an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee

under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid . . . The new chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances. As in current law, 100 percent payment plans will be encouraged . . . It is also necessary to prevent chapter 13 plans from turning into mere offers of composition plans under which payments would equal only the non-exempt assets of the debtor.

*S.Rep. No. 989*, 95th Cong., 2d Sess. 12, 13 (1978), *reprinted in* [1978–5] U.S.Code Cong. & Admin. News, pp. 5787, 5798.

The Senate report shows that even as Congress sought to make the liberal provisions of Chapter 13 more widely available, it did not intend to change the basic nature of a Chapter 13 proceeding. Nowhere in the legislative history that accompanied the amendments did Congress purport to change the settled rule that a Chapter XIII plan should result in a substantial payment of debts. Congress must be presumed to have known that the Supreme Court had interpreted Chapter XIII in just such a manner when it held:

> In designing a remedy for the dilemma facing a debtor seeking to repay, rather than avoid, his obligations, the Congress settled upon the wage–earner extension–of–term procedures of Chapter XIII. The chapter gave–and was intended to give–to the wage earner a reasonable opportunity to arrange installment payments to be made out of his future earnings. Congress clearly intended to encourage wage earners to pay their debts in full, rather than to go into straight bankruptcy or composition, by offering two inducements: (1) avoidance of an adjudication of bankruptcy with its attendant stigma; and, at the same time, (2) temporary freedom during the extension from garnishments, attachments and other harassment by creditors.

*Perry v. Commerce Loan Co.*, 383 U.S. 392, 395, 86 S.Ct. 852, 854, 15 L.Ed.2d 827 (1966). *See also Matter of White Birch Park, Inc.*,

471 F.Supp. 159, 165 (E.D.Mich.1979) ("The purpose of Chapter XIII is to provide a vehicle for relief and for rehabilitation to persons dependent upon their earnings from personal services to effectuate a composition with creditors, or to procure extensions of time to pay debts, or both.")

Previously, Congress had conditioned the right of a debtor to proceed under Chapter XIII on obtaining the approval of the creditors. This was often recognized by the courts.

> The objective of Chapter 13 . . . is to furnish a method by which persons dependent upon their earnings from personal services can effectuate a program whereby they will be given an extension of time to pay their debts, on the condition that the program is acceptable to a majority of the creditors.

*In re Teegarden*, 330 F.Supp. 1113, 1114 (E.D.Ky.1971). *See also In re Hendren*, 240 F.Supp. 807, 808 (S.D.Ohio 1965).

Having eliminated the creditors' veto right in the 1978 revision, Congress cannot lightly be held to have removed the major remaining protection accorded to those creditors, that is, the requirement of full or substantial payment. If Congress had intended to abolish the substantiality requirement, it could have done so unambiguously. Because it did not, this Court must conclude that no change was intended.

The majority of bankruptcy judges who have interpreted the "good faith" language of § 1325(a)(3) have concluded that some type of substantiality requirement must be read into that subdivision. In a well–reasoned opinion, the court in *In re Iacovoni*, 2 B.R. 256, 5 BCD 1270 (Bkrtcy D.Utah 1980), decided that "[a] proposal of *meaningful* repayment must be made, in light of the debtor's particular circumstances, even, when, as in these cases, all of the debtor's assets are exempt." *Id.* at 268, 5 BCD, at 1277 (emphasis added). The court concluded that the legislative history

> reveals that the proponents of the Chapter 13 provisions intended and projected that a substantial amount would be paid out under all proposed plans. In citing the reasons for the changes to be made in

the Chapter 13 provisions, the House Report criticized the former Chapter XIII as being "overly stringent and formalized" which "discouraged overextended debtors from attempting to arrange a repayment plan under which all creditors are repaid most, if not all, of their claims over an extended period." H.R.Rep. No. 95–595, at 117, U.S.Code Cong. & Admin. News [1978], p. 6077. Thus, in reworking the Chapter 13 provisions, proponents were attempting to produce a medium for repayment of "most, if not all" of the claims against the debtor.

*Id.* at 266, 5 BCD at 1276. Similarly, the court in *In re Beaver*, 2 B.R. 337, 339, 5 BCD 1285, 1286 (Bkrtcy S.D.Cal.1980), reasoned that "[l]osses to creditors otherwise accruing in a liquidation were seen [by Congress] as being *significantly* reduced in a Chapter 13 setting." Concluding that a plan under Chapter 13 must be a "meaningful attempt to come to terms with creditors," the *Beaver* court interpreted good faith to mean not just simple honesty, but as "a fundamental fairness in dealing with one's creditors." *Id.* at 340, 5 BCD at 1287. *See also In re Powell*, 2 B.R. 314, 5 BCD 1233 (Bkrtcy E.D.Va.1980); *In re Campbell*, 3 B.R. 57, 5 BCD 1365 (Bkrtcy S.D.Cal. 1980); *In re Howard*, 3 B.R. 75, 5 BCD 1375 (Bkrtcy S.D.Cal.1980).

■ Given the legislative history accompanying the 1978 amendments, the prior caselaw, and the recent cases interpreting the good faith requirement of § 1325(a)(3), this Court concurs with the bankruptcy court that a Chapter 13 plan must provide for substantial payments to unsecured creditors. The provision for substantial payments is an essential element of the good faith test. In reaching this result, the Court necessarily rejects the debtor's argument that § 1325(a)(4) establishes the sole criterion for the payments to be made to unsecured creditors. In view of the legislative history, that test—that the unsecured creditors receive more under a plan than they would receive in a straight bankruptcy—merely sets forth a *minimum* eligibility for confirmation. Section 1325(a)(4) does not work an implied repeal of the substantial payment requirement.

■ The Court, however, does not endorse the bankruptcy court's holding that good faith can be found only if the debtor proposes to pay 70% of the allowed unsecured claims and if the plan represents his best effort. The legislative history provides no support for the argument that Congress intended to incorporate into the confirmation standards of § 1325 the requirements of the exception to the six–year bar rule found in § 727(a)(9). In fact, the presence of those tests in § 727(a)(9) suggests that their absence in § 1325(a) was intentional rather than accidental. This conclusion is reinforced by the fact that § 727(a)(9) distinguishes between "good faith" and "best effort"; had Congress intended to apply a best effort standard in § 1325(a), it could have drawn the same distinction there. This conclusion is also supported by the fact that § 1325(a)(4) defines the minimum level of payments to unsecured creditors: at the least, creditors must receive what they would have received in a Chapter 7 liquidation. This requirement would be rendered superfluous if the confirmation standards were interpreted to define that floor as 70% of the allowed unsecured debts.

Because the language of § 1325(a)(4) would be vitiated, the courts cannot impose a rigid 70% test as did the bankruptcy court in this case. The rejection of this test will not lead to the absurd results envisioned by the bankruptcy court. The court was apparently troubled by the fact that § 727(a)(9) could not be reconciled with the requirements of § 1325(a) if the latter did not also include a 70% requirement. But there is no discrepancy here, because § 727(a)(9) and § 1325(a) are directed to different aims. Section 1325(a) defines the standards for a proper Chapter 13 plan; § 727(a)(9) defines the occasions when a debtor may take a straight bankruptcy after he has obtained a Chapter 13 discharge. Section 727(a)(9) merely says that a debtor cannot file for straight bankruptcy if he has availed himself of the advantages of Chapter 13 within the previous six years. But it does allow for such a filing if the benefits of the prior Chapter 13 discharge were slight and not seriously prejudicial to creditors. Section 727(a)(9) allows a debtor to

take two bites of the figurative apple within a brief timespan so long as the first bite is small. Otherwise, the debtor must await the passing of six years before he can obtain relief under Chapter 7. Read in this way, § 727(a)(9) should not preclude the confirmation under § 1325(a) of a plan that provides for the payment of less than 70% of unsecured claims. Because there is no inherent inconsistency between § 727(a)(9) and § 1325(a), there is no basis for reading a blanket 70% test into the latter. Proper statutory construction does not permit a finding that Congress simply forgot to include such a test in § 1325(a), and this Court cannot assume any such oversight. *See, e. g., Cannon v. University of Chicago,* 441 U.S. 677, 742, 99 S.Ct. 1946, 1981, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting) ("It defies reason to believe that in each of these statutes Congress absent–mindedly forgot to mention an intended [provision].").

■ This Court holds that the bankruptcy court correctly concluded that a Chapter 13 plan requires that substantial payments be made to unsecured creditors and that such payments form a component of the good faith element of § 1325(a)(3). The bankruptcy court erred, however, when it decided that "substantial" requires payment of 70% of allowed unsecured claims and when it decided that a Chapter 13 plan must necessarily represent the debtor's best effort to repay his creditors. The error lies not in having considered these factors, but in applying them in blanket fashion. The correct approach, in this Court's view, is to treat the issues of substantiality and best effort as elements of good faith. Unless the courts have discretion to consider such factors, the danger exists that Chapter 13 plans could become shams that would emasculate the safeguards that Congress has included in Chapter 7 to prevent debtor abuse of the bankruptcy laws. The courts retain discretion to prevent such abuse, and that discretion can be exercised effectively through a meaningful interpretation of the good faith requirement of § 1325(a)(3). In each case, the bankruptcy court must consider the debtor's entire circumstances to determine whether his plan proposes to make meaningful payments to unsecured creditors. In making that determination, the courts should be mindful of the fact that the unsecured creditors must rely on the court to give meaning to the congressional intent that they receive substantial payments. Within these guidelines, the courts should proceed on a case–by–case basis.

■ Because the bankruptcy court failed to exercise proper discretion in this case, the case must be remanded for that court to determine in the first instance whether the debtor has offered his plan in good faith. This Court is unwilling to say as a matter of law that the 15% payments proposed here are insubstantial, although the bankruptcy court may well reach such a conclusion. This Court holds only that the bankruptcy court cannot *sua sponte* impose its own inflexible standards.

The case is reversed and remanded for proceedings not inconsistent with this decision.