**In re Harold LEVINE, Debtor.**

**Bankruptcy No. 80–2102–HL.**

United States Bankruptcy Court,
D. Massachusetts.

March 26, 1981.

Norman P. Mamber, Boston, Mass., for debtor.

Joseph Szabo, Boston, Mass., Trustee.

## MEMORANDUM RE DISMISSAL OF CHAPTER 13 PROCEEDINGS

HAROLD LAVIEN, Bankruptcy Judge.

The Debtor in this case has proposed two plans under Chapter 13 of the Bankruptcy Code. The first proposed plan provided for a 4% cash dividend to all unsecured creditors, to be paid in monthly installments of $50.00 over a three year period. The total amount of unsecured debt is $40,464.36. This plan was not confirmed by the Court because the meager dividend did not comport with the requirements of Chapter 13 for the reasons thereinafter set forth.

An amended plan was proposed which provided for a 6% dividend to unsecured creditors to be paid out over a five year period. This was orally increased, at the hearing, to 10% over five years. This plan was also unacceptable to the Court for the same reasons as the first proposed plan. Having failed to gain confirmation of any one of the plans, these proceedings are dismissed under 11 U.S.C. § 1307(c)(4).

Section 1325(a) of the Code requires the Court to confirm a plan if, *inter alia*, "The plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "Good faith" is not defined in Chapter 13 or anywhere else in the Code. Likewise, the legislative history surrounding Chapter 13 is of limited assistance in defining the term. "Good faith" as used in the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed) is discussed at 9 *Collier on Bankruptcy* Para. 9.20, at 319 (14th ed. 1978): "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the Chapter] in the proposal . . ." It is clear that there is no black letter meaning to "good faith". In its search for "good faith", the Bankruptcy Court must "rely upon the common sense and the perception of justice and equity in the federal courts to assure the fair administration of the new Chapter 13." *In re Hurd*, 4 B.R. 551, 6 B.C.D. 411, 417 (Bkrtcy., W.D.Mich.1980).

The majority of bankruptcy cases that have quantifiedly interpreted the "good faith" requirement of § 1325(a)(3) have concluded that there must be a meaningful or substantial payment under the plan. *In re*

*Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (Bkrtcy, D.Utah 1980); *In re Burrell*, 6 B.C.D. 900 (Bkrtcy, N.D.California 1980) (court rejected 15% payment plan); *In re Johnson*, 6 B.C.D. 277, 5 B.R. 40 (Bkrtcy, S.D.Ohio 1980) (10% plan rejected); *In re Bloom*, 6 B.C.D. 141, 3 B.R. 467 (Bkrtcy, C.D.California 1980) (1% plan rejected); *In re Beaver*, 5 B.C.D. 1285, 2 B.R. 337 (Bkrtcy, S.D.California 1980) (1% plan rejected); *In re Howard*, 5 B.C.D. 1375, 3 B.R. 75 (Bkrtcy, S.D. California 1980) (8% plan rejected). The Eighth Circuit Court of Appeals recently held that a Chapter 13 zero payment plan "amounts to an abuse of . . . the spirit of the chapter . . ." *In re Terry*, 6 B.C.D. 974, 630 F.2d 634 (8th Cir. 1980). Several other cases have held that zero payment plans should not be confirmed, only some of which are mentioned here. *See, e. g., In re Coleman*, 6 B.C.D. 795, 5 B.R. 812 (Bkrtcy, W.D.Kentucky 1980); *In re Iacovoni*, 2 B.R. 256, 5 B.C.D. 1270 (Bkrtcy, D.Utah 1980); *In re Seman*, 6 B.C.D. 626, 4 B.R. 568 (Bkrtcy, S.D.N.Y.1980).[1]

■ Even short of a finding of bad faith under § 1325(a)(3), I would deny confirmation of these plans. Chapter 13 was intended by Congress to provide certain benefits to debtors which are unavailable under either Chapter 11 or Chapter 7. For example, Chapter 13, unlike Chapter 11, allows confirmation of plans without creditor consent, there being no provision for unsecured claimants to accept or reject the plan.[2] A plan under Chapter 13 may be confirmed despite the fact that the Debtor may have been guilty of an act that would bar a discharge under Chapter 7. Completion of the plan discharges all debts (other than long term debts and those based on support owed to a spouse or child), including fraud judgments, criminal fines, embezzlement and theft liabilities, as well as all other debts that would be excepted from discharge had the Debtor filed Chapter 7 bankruptcy.[3] Obviously, the benefits of Chapter 13 require more from the Debtor than nominal payments. At least one court has held that the benefits granted to the debtor who files under Chapter 13 require the debtor to make substantial payments pursuant to a plan equal to 70% of the unsecured debt outstanding. *In re Burrell*, 5 B.C.D. 1321, 2 B.R. 650 (Bkrtcy, N.D.Cal. 1980), *reversed, In re Burrell*, 6 B.C.D. 900, 6 B.R. 360 (Bkrtcy, Dist.Ct.N.D.Cal.1980). The District Court reversed the Bankruptcy Court on appeal as far as the 70% payment requirement was concerned, but upheld the Bankruptcy Court on its determination that a Chapter 13 plan must provide for substantial payment of unsecured claims as an essential element of the plan's good faith under § 1325(a)(3). *See* cases *supra*.

Using a 15% discount factor,[4] under the plans proposed here, the first, a 4% payment over three years, has a present value percentage payment equal to 2.5%. The second plan, 6% over five years, has a present value percentage payment of 3.7%. The third, orally, proposed plan of 10% over five years has a present value percentage payment of 5%. All of these plans fall well within the range of payment plans that have been rejected by a majority of courts. *See* cases cited *supra*.

---

1. While the Circuit and District Courts to have considered the question have supported this view, there have been Bankruptcy Court cases approving zero dividend plans. *See, e. g., In re Cloutier*, 3 B.R. 584, 6 B.C.D. 196, (Bkrtcy, D.Colo.1980); *Matter of Harland*, 3 B.R. 597, 6 B.C.D. 235 (Bkrtcy, D.Neb.1980).

2. Under the old Bankruptcy Act, acceptance by the majority in number and amount of creditors was required by Chapter XIII, 11 U.S.C. § 1052(1).

3. For example, the embezzler who completes a plan under Chapter 13 is discharged of the debt while the embezzler who files under Chapter 7 or under Chapter 11 remains liable. *See* 11 U.S.C. §§ 523(a)(4), 1141(d)(2).

4. 15% was chosen as an appropriate discount rate based on the present prime interest rate of 17.5% and the present interest on long term government notes of approximately 14%. Certainly, the risk involved as to the certainty of payments under these plans, requires at least a 1% increase from the lower risk government notes. *See In the Matter of Willis*, 6 B.C.D. 1101, 6 B.R. 555 (Bkrtcy, N.D.Ill.1980).

Moreover, § 1322(c) of the Code permits approval of plans for periods of more than five years only upon a showing of cause. This has been interpreted to mean that a five year plan should be confirmed when necessary to pay creditors a substantial dividend. *See In re James Poff*, 6 B.C.D. 1320, 7 B.R. 15 (Bkrtcy, S.D.Ohio 1980), where the court held that it would not approve a plan lasting more than three years unless it provides for at least 70% payment to unsecured creditors. While 70% may be open to a wide difference of judgment, something more than a nominal increase from 6% to 10% is required for a showing of cause.[5]

In the words of the *Beaver* court, *supra*, a plan under Chapter 13 must be a "meaningful attempt to come to terms with creditors." Otherwise, what we have is in fact a disguised Chapter 7 looking for the Chapter 13 benefits. *See In re Wiggles*, 6 B.C.D. 1326, 7 B.R. 373 (Bkrtcy, N.D.Ga. 1980). I find that in this case, the Debtor's proposed plans provide for insubstantial, indeed meager, payments and that they are not meaningful attempts to come to terms with creditors. If this represents the Debtor's best effort, he is not blameworthy, he just doesn't qualify for Chapter 13. The plans are therefore not confirmed.

Since the Debtor has not requested a conversion to Chapter 7 under 11 U.S.C. § 1307, nor have any creditors, and since this Debtor is unable to present and fund a confirmable plan, this Chapter 13 is dismissed.

---

**5.** Nominal plans for extended periods of time may even be of negative value to the creditor who has to maintain an open account that may cost him more for bookkeeping than he receives. Also, while not made a consideration by the Code, there is the cost incurred by the trustee in administering a nominal plan for an extended period.