**In the Matter of Gus Nick
VLAHAKIS, Debtor.**

**Bankruptcy No. 80–01467–Mac.**

United States Bankruptcy Court,
M. D. Georgia,
Macon Division.

April 17, 1981.

L. Z. Dozier, Macon, Ga., for debtor.

Office of Standing Chapter 13 Trustee, Macon, Ga.

## STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

Before the Court is the motion of the standing Chapter 13 trustee to dismiss the petition of Gus Nick Vlahakis, debtor herein. The matter came on regularly to be heard on February 27, 1981 at 10:00 a. m. at which time the good faith requirement of 11 U.S.C. § 1325 was brought into issue, and for the purpose of this decision the Court will only consider this question of whether the plan is brought in good faith. After considering all evidence presented, the Court has this day entered an order determining that the plan of the debtor, as presented, is not proposed in good faith according to the purposes and spirit of Chapter 13 of the Bankruptcy Code. The order allows debtor 14 days within which to propose a plan meeting the requirements of 11 U.S.C. § 1325 or to convert his petition to one seeking relief under Chapter 7 of the Bankruptcy Code. The order further provides that if neither of the prescribed actions are taken within the time allowed, the debtor's petition will be dismissed. In support of its order, the Court attaches the following findings of fact and conclusions of law. To the extent any of said findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of said conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

On December 5, 1980, Gus Nick Vlahakis filed his voluntary petition seeking the relief of Chapter 13 of the Bankruptcy Code. A hearing pursuant to 11 U.S.C. § 341 was held on February 3, 1981 at 2:30 p. m. Thereafter on February 9, 1981, Arthur E. Banks, now deceased, then standing Chapter 13 trustee, filed his petition seeking dismissal of the debtor's petition. The matter was heard on February 27, 1981.

As presented at trial, the debtor currently has three dependents, a wife and two children ages two years and four years. In addition, the debtor's wife is expecting a third child either late in May or early in June of this year.

Rhodes Furniture is the only creditor of the debtor treated as secured under the debtor's proposed plan. Rhodes is owed approximately $400.00 and is secured by a living room suite, television and air conditioner, but the debtor testified that the television and air conditioner have been stolen and that the living room suite is worth only $250.00. Thus, the amount of the allowable secured claim of Rhodes is only $250.00.

Unsecured creditors are numerous, and counting the $150.00 unsecured portion of the Rhodes Furniture claim, their claims total $9,146.81. In addition, administrative costs, normally assessed as 10 percent of the payments under the plan, are approximately $84.00, and the disclosure statement of the attorney for the debtor reveals an agreement between the debtor and his attorney for the payment of $325.00 attorney's fees under the plan, which fee is subject to court approval.

The debtor has no prior history of straight bankruptcy, but previously filed a Chapter XIII proceeding on August 22, 1978, which proceeding was dismissed on September 26, 1980. Although there is some indication of creditor harassment, and the debtor's 1979 Mercury was repossessed in November of 1980, there were no garnishments, foreclosures, executions or attachments pending when the petition was filed. The debtor has no debts which have been cosigned, and owns no real estate or equity in secured personal property that cannot be exempted under Ga.Code Ann. § 51–1301.1.

The debtor proposes to pay $60.00 per month for 14 months to the trustee, and his plan provides for distribution of that amount as follows:

|  | Amount Due | Plan Payment |
| --- | --- | --- |
| Rhodes Furniture | $ 400.00 | $ 48.00/mo. |
| Costs & Unsecured creditors | 8,996.81 | 12.00/mo. |

(The plan would also pay the attorney's fee allowed by the Court and the administrative costs of $84.00 as priority expenses, which sums are not included in the $8,996.81 figure of costs and unsecured creditors.)

The debtor's monthly budget is as follows:

| | | |
|---|---|---|
| Monthly take-home-pay | | $741.50 |
| Rent | $225.00 | |
| Utilities (electric $40, heat $40, water $5) | 85.00 | |
| Food | 200.00 | |
| Automobile Insurance | 10.00 | |
| Transportation | 60.00 | |
| Medical (temporary due to wife's pregnancy) | 93.00 | |
| Total | $673.00 | |
| Disposable income for payment of a Chapter 13 Plan | | $ 68.50 |

As proposed, the debtor's plan would leave an $8.50 "cushion" of income to apply to unexpected contingencies and to expenses not covered by the debtor's budget. The plan is what is known in the bankruptcy practice as a "1% plan" because that is the percentage of unsecured debt that is to be paid under the plan.

## CONCLUSIONS OF LAW

Dismissal of a petition is governed by 11 U.S.C. § 1307 which allows the Court to dismiss a case under Chapter 13 upon request of a party in interest and for cause shown. Since "including" under 11 U.S.C. § 102(3) is not limiting, the list given in § 1307 as reasons for dismissal is not exhaustive, but the Court in this instance takes note of 11 U.S.C. § 1307(c)(4) in its consideration of the matter at hand. That language reads:

"(c) Except as provided in subsection (e) of this section, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—...

(4) denial of confirmation of a plan under section 1325 of this title and denial of additional time for filing another plan or a modification of a plan ...."

Accordingly, even if the motion to dismiss is made prior to confirmation, if in the Court's opinion a plan as proposed is absent "good faith" and so not subject to confirmation pursuant to 11 U.S.C. § 1325, that plan and its underlying petition may be dismissed. As set out in 11 U.S.C. § 1325, the elements necessary to a confirmable plan are:

1. the plan complies with Chapter 13 and the applicable provisions of other chapters of Title 11 of the United States Code;

2. all fees or charges required to be paid before confirmation by the plan or by Chapter 123 of Title 28 of the United States Code have been paid;

3. the plan has been proposed in good faith and not by any means forbidden by law;

4. the plan proposes payments to creditors of at least the value they would receive in liquidation;

5. the plan is accepted by all secured creditors or they are paid present value and retain their lien, or their collateral is surrendered;

6. the plan is feasible.

Assuming arguendo that in the case before the Court, the debtor's plan, as proposed, is feasible, the question for decision by this Court is whether the plan is proposed in good faith. In the opinion of this Court it is not.

## DISCUSSION

Because the term "good faith," as it is used in 11 U.S.C. § 1325, must apply to so many diverse factual situations, it defies strict definition. While one commentator has described it, in conjunction with Chapter XIII of the Bankruptcy Act, as an inquiry into "whether or not there has been an abuse of the provisions, purpose or spirit of Chapter XIII in the proposal or plan," 10 *Collier on Bankruptcy* ¶ 29.06(6) (14th ed. 1976), that description is only partial. In fact, good faith is a combination of elements. It must be viewed as a whole to prove an intention on the part of a debtor that he comes within the spirit of that chapter, and that he honestly requires the liberal protection of the chapter. Though not inclusive and not necessarily in order of importance, the elements used by the Court

in its determination of the good faith of the debtor herein are as follows:

1. the debtor's ability to make payments under the plan as proposed;
2. the total amount to be paid by the debtor;
3. the duration of the plan;
4. the amount of secured debt in relation to the amount of unsecured debt;
5. the percentage of unsecured claims to be paid under the plan;
6. possible equity in property of the debtor unprotected by exemption;
7. the presence or absence of secured real property which is the principal residence of the debtor;
8. past history of relief under Title 11 of the United States Code, and the propriety of alternative relief under separate chapters thereof;
9. creditor action against the debtor;
10. the presence or absence of codebtors on obligations of the debtor; and
11. the presence or absence of debts nondischargeable in straight bankruptcy.

After applying the above-stated elements to this particular debtor, the Court is left of the opinion that the plan before it for confirmation has not been proposed in good faith and therefore should not be confirmed.

To begin with, Chapter 13 of the Bankruptcy Code is not a substitute for Chapter 7 of the Code. Each of the respective chapters for relief in Title 11 have peculiar benefits and exact peculiar prices.

In Chapter 7, unsecured debts are discharged, and secured debts are satisfied by surrender of the collateral securing them. Relief is quick and final. The price paid for such relief is the loss of secured property and a bar on similar discharge for six years. The relief is therefore geared to situations where total debt is high, unsecured debt is large in relation to secured debt, and the debtor's equity in property is adequately protected by his statutory exemptions, allowing him the fresh start which is the backbone of the bankruptcy principle.

In Chapter 13, the relief is not so swift, and discharge may be delayed for up to five years. In contrast to liquidation, the property of the debtor, even if nonexempt, stays in the possession of the debtor. The plan may also pay arrearages on secured property, and the debtor may remain in possession of his secured property. In addition, debts normally nondischargeable under Chapter 7 may be treated by a Chapter 13 plan and may be discharged (with two minor exceptions) and creditors are prevented from seeking satisfaction from codebtors of the petitioner's obligations without showing good cause. These benefits of Chapter 13 must be balanced by consideration on the part of a debtor. The debtor is required to live under the supervision of the Court for an extended period of time and to make periodic payments toward the elimination of his debts. When at all possible these payments should be "meaningful" or "substantial." *In re Burrell,* 6 B.R. 360, 6 B.C.D. 900 (1980).

With the above in mind, the pattern for determining good faith begins to take shape. No single element of the list prescribed by the Court may be given extraordinary significance unless from the entire factual situation it is seen that one particular element is more significant than others, e. g., plans proposing insubstantial payments to unsecured creditors require more careful scrutiny of the other elements to insure that proper purposes of Chapter 13 are being served. Still, in every inquiry, the Court must remain flexible and ascribe to the particular factors the proper proportionate weight. The final determination will ultimately hinge on whether the factors working together fulfill the spirit of Chapter 13.

To complete the determination, finding the spirit of Chapter 13 becomes necessary, and that spirit can only be gleaned from the purposes of the Chapter as presented in its legislative history. Study of the legislative history of Chapter 13 of the Bankruptcy Code reveals four basic purposes of the chapter:

1. to provide court protection and supervision to financially troubled debtors enabling them to support themselves and dependents free from creditor harassment while repaying their debts in the meantime;
2. to allow debtors to preserve possession of and equity in secured property and retain possession of their non-exempt assets;
3. to avoid the stigma of bankruptcy by allowing a debtor to repay his debts over an extended period;
4. to provide meaningful or substantial payments to unsecured creditors.

See H.R.Rep.No.95–595, 95th Cong., 1st Sess. 118 and 119 (1977), U.S.Code Cong. & Admin.News 1978, 5787; S.Rep.No.95–989, 95th Cong., 2d Sess. 12 and 13 (1978). A good faith application of a debtor for relief under Chapter 13 must necessarily be judged with the legislative history in mind.

The Court, in this instance, after its analysis, finds that the debtor has not brought his petition in good faith. The debtor is a cook in a restaurant in Macon, Georgia, making approximately $750.00 per month in take-home pay. He has a wife and two children under five years of age, with a third child expected either late in May or early in June. His estimated fixed monthly expenditures leave him a total of $68.50 disposable income at the end of the month with which to meet unexpected expenses and miscellaneous expenditures. From that he proposes to pay $60.00 per month toward his Chapter 13 plan. His only secured debt is collateralized by a used living room suite valued by him at $250.00. The rest of his substantial debt, over $9,000.00, is unsecured. He has no prior history of straight bankruptcy, although he did file a prior Chapter 13 proceeding in this Court which was dismissed in September of 1980 after he lost his previous job. He currently owns no real estate and has no equity in personal property that cannot be exempted under Ga.Code Ann. § 51–1301.1. He is borrowing a car, and there is no evidence that any of his debts would be nondischargeable under 11 U.S.C. § 523. In addition, since the plan, as proposed, pays unsecured claimants less than 70 percent of their allowable claims, the debtor is subjecting himself to the six-year bar on subsequent discharges under Chapter 7. In the meantime, he will be saddled with making payments of $60.00 per month from a disposable income of $68.50 for 14 months, the feasibility of which, in all fairness, must be questioned. There being no extraordinary circumstances shown to the Court to necessitate a Chapter 13 proceeding that does not make substantial and meaningful payments to unsecured creditors, it is evident that the debtor is attempting to use this proceeding as a substitute for Chapter 7.

In closing, it should be noted that this Court is of the opinion that composition Chapter 13 plans must be closely monitored to ensure that they do not do an injustice to the spirit of Chapter 13. Chapter 13, since it has so many favorable aspects and no restrictions as to frequency of relief, is an important tool in the rehabilitative machinery of the Bankruptcy Code. This tool should not be used to circumvent other chapters of Title 11, but should be used to fulfill its stated purposes. Since the plan under consideration cannot be confirmed as proposed, it is the opinion of this Court that the debtor should have some time to reassess his position and either modify his plan or convert his petition to a proceeding under Chapter 7 of the Bankruptcy Code.