In re Brenda Joy SYRUS, a/k/a Benda Joy McDaniel, Debtor.

Bankruptcy No. 81–20338.

United States Bankruptcy Court, D. Kansas.

July 22, 1981.

Thomas M. Mullinix, Kansas City, Kan., for debtor.

T. L. Green, Asst. Atty. Gen., Topeka, Kan., for ESU.

Joseph H. McDowell, Kansas City, Kan., trustee.

## MEMORANDUM OPINION CONFIRMING PLAN

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on June 16, 1981, on the objection of Emporia State

University (ESU) to the confirmation of debtor's Chapter 13 plan. ESU appeared by and through T. L. Green, Assistant Attorney General for the State of Kansas. Debtor appeared by and through her attorney, Thomas M. Mullinix. The trustee, Joseph H. McDowell, appeared in person.

## FINDINGS OF FACT

The facts are not in dispute. After hearing arguments of counsel and reviewing the memorandums filed on behalf of the respective parties, the Court finds:

1. That the Court has jurisdiction over the parties and subject matter.

2. That ESU has an unsecured claim of $1,015.00 arising from a National Direct Student Loan which first became due and payable less than five years prior to the date debtor filed petition. Such debt would in all probability, be nondischargeable in a Chapter 7 proceeding, pursuant to section 523(a)(8) of the Bankruptcy Code.

3. That debtor filed a Chapter 13 petition on April 14, 1981, listing said debt to ESU.

4. That debtor's plan called for a payout of $140.00 per month for 46 months, for which an extension has been granted. All secured creditors are to be paid first and in full; unsecured creditors, including ESU, are to be paid 70% of their claims; plan included $6,459.51 in debts; debtor's monthly income is $700.00; and debtor's monthly expenses, including plan payments, are $697.35.

5. That ESU filed an objection to the confirmation of the plan on May 13, 1981.

## ISSUES

WHETHER A CHAPTER 13 PLAN WHICH COMPROMISES A DEBT THAT WOULD BE NONDISCHARGEABLE IN A CHAPTER 7 PROCEEDING PURSUANT TO SECTION 523(a)(8) IS PROPOSED IN GOOD FAITH WHEN THE DEBT IS COMPROMISED AT 70%. WHETHER SECTION 1325(a)(4) ALLOWS AN EDUCATIONAL LOAN DEBT TO BE COMPROMISED AT ALL, WHEN SUCH DEBT WOULD BE NONDISCHARGEABLE IN A CHAPTER 7 PROCEEDING PURSUANT TO § 523(a)(8).

## CONCLUSIONS OF LAW

11 U.S.C. § 1325(a) states in pertinent part as follows:

"(a) The court shall confirm a plan if—

\* \* \* \* \* \*

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;"

ESU argues that the debtor's plan should not be confirmed because it does not comply with § 1325(a)(3) and § 1325(a)(4). ESU argues that a plan proposing to pay 70% of a debt that would be nondischargeable under Chapter 7 is a plan filed in bad faith.

The Code does not define "good faith". Most courts define it as substantial or meaningful payment. What percentage compromise is substantial or meaningful is decided case-by-case after considering all of the debtor's circumstances. *In re Burrell*, 6 B.R. 360, 2 C.B.C.2d 1019 (Bkrtcy.D.C.N.D. Cal.1980); *Matter of Cook*, 3 B.R. 480, 1 C.B.C.2d 780 (Bkrtcy.S.D.W.Va.1980); *In re Iacovoni*, 2 B.R. 256, 1 C.B.C.2d 331 (Bkrtcy. D.Utah 1980); *In re Yee*, 7 B.R. 747, 3 C.B.C.2d 388 (Bkrtcy.E.D.N.Y.1980); *In re Osborne*, 8 B.R. 200, 3 C.B.C.2d 586 (Bkrtcy. N.D.Ill.1981).

A variety of circumstances are considered, including: income, expenses necessary to maintain a minimal standard of living; foreseeable extraordinary expenses; amount of debt included in plan; nature of debts included in plan; and proposed compromise. After considering these circumstances, this Court finds that the debtor's plan was filed in good faith.

Debtor's monthly income of $700.00 minus debtor's monthly expenses of $557.35 leaves a budget surplus of $142.65. Out of this surplus, debtor proposes to pay $140.00 into the plan. The plan pays 100% of the $1,320.50 in secured debts and 70% of the $3,311.72 in unsecured debts. This Court concludes that the plan provides for a substantial and meaningful repayment of debts. Thus, the plan was filed in good faith as required by 11 U.S.C. § 1325(a)(3).

ESU's second argument is that the plan does not comply with § 1325(a)(4). As the Court understands it, ESU reasons that because the student loan would be nondischargeable in a Chapter 7 proceeding (pursuant to § 523(a)(8)), ESU would be paid more than 70% in a chapter 7 proceeding. Therefore, ESU argues, a plan proposing to pay 70% of their claim would not distribute as much to them as "would be paid on such claim if the estate of the debtor were liquidated under chapter 7 . . ."

The overwhelming weight of authority does not read 11 U.S.C. § 1325(a)(4) to include the unliquidated value of a nondischargeable debt in the "amount that would be paid" under chapter 7. As a practical matter, courts cannot evaluate the value of a nondischargeable debt, because nondischargeability does not insure 100% payment. Nondischargeability only insures the continued right to pursue collection of the debt. The extent of collectability and the offsetting costs of collection cannot be estimated by the courts. In re Crawford, 10 B.R. 815 (Bkrtcy.M.D.Ala.1981); Matter of Cole, 3 B.R. 346, 1 C.B.C.2d 795 (Bkrtcy.S.D. W.Va.1980); Matter of Marlow, 3 B.R. 305, 1 C.B.C.2d 705 (Bkrtcy.N.D.Ill.1980); In re Hurd, 4 B.R. 551, 2 C.B.C.2d 190 (Bkrtcy.W. D.Mich.1980).

As one bankruptcy court aptly explained: ". . . full payment of a claim is not the inevitable result of a judgment declaring a debt nondischargeable. This alone is enough to mortally wound the assertion that 100% of a nondischargeable debt must be paid under a Chapter 13 plan." In re Walsey, 7 B.R. 779, 6 B.C.D. 1410 (Bkrtcy.W.D.Ga.1980)

Most courts construe the "amount that would be paid" to mean the amount that would actually be distributed out of the assets that were in the estate at the time the petition was filed. In re Hurd, 4 B.R. 551, 2 C.B.C.2d 190 (Bkrtcy.W.D.Mich.1980); In re Jenkins, 4 B.R. 278, 2 C.B.C.2d 129 (Bkrtcy.D.Colo.1980); In re Yee, 7 B.R. 747, 3 C.B.C.2d 388 (Bkrtcy.E.D.N.Y.1980). In other words, the "amount that would be paid" is the liquidation value of all nonexempt property minus the chapter 7 administrative expenses. In re Keckler, C.C.H. ¶ 67,367 (N.D.Ohio 1980).

There is some authority for ESU's position, however. Two decisions from this district, authored by Bankruptcy Judge James A. Pusateri, hold that the legal right to sue on a nondischargeable debt has value for purposes of determining the amount that would be paid under chapter 7. In re Chaffin, 4 B.R. 324, 2 C.B.C.2d 229 (Bkrtcy.D. Kan.1980); In re McMinn, 4 B.R. 150, 1 C.B.C.2d 1007 (Bkrtcy.D.Kan.1980).

In Chaffin, the court denied confirmation of a plan because the debtor had received a chapter 13 discharge less than six years before. Although no six year provision exists in chapter 13, the court found that the creditors would not receive "equivalent value" if a discharge were permitted under chapter 13 when one would not be available under chapter 7. Although it denied confirmation of the plan, the court noted that if the plan paid the creditors the value of their nondischargeable debts, the plan would be confirmed, as providing "equivalent value."

In McMinn, the court denied confirmation of a plan paying one percent to creditors whose debts would be nondischargeable under chapter 7. The court was concerned that such a 1% plan, if confirmed, could be easily completed, resulting in a discharge under 11 U.S.C. § 1328(a) of all debts, including § 523(a)(8) debts. Yet if another debtor filed a plan for high percentage payment and was unable to complete the plan, that debtor would have to try for a hardship discharge under § 1328(b). Under § 1328(b) and § 523(a), debts remain nondischargeable.

Clearly there is room for abuse of § 1328(a). The remedy, however, does not lie in court created restrictions on § 1325(a)(4). As this Court stated in *In re Graff*, 7 B.R. 426, 3 C.B.C.2d 421 (Bkrtcy.D.Kan.1980):

"In the Technical Amendments Bill to the Bankruptcy Reform Act of 1978 presently pending before Congress (S.658), section 1328(a)(2) has been amended to include sections 523(a)(6) and 523(a)(8). This is clear indication that when Congress only put § 523(a)(5) in the original bill as an exception to discharge under § 1328(a)(2) that all other sections of 523(a) were subject to being compromised under Chapter 13 and discharged of all debts upon the completion of payments under the plan (11 USC § 1328(a))."

This Court agrees with the statement of the Hon. Joe Lee, U. S. Bankruptcy Judge for the Eastern District of Kentucky in an article written in *American Bankruptcy Law Journal*, Vol. 53, pg. 307, Fall 1979, where he stated:

"... A nondischargeable debt, such as a debt for embezzlement, for money obtained by fraud, for willful and malicious injury to the person or property of another, for a fine or for *an educational loan*, can be compromised in the same manner as other unsecured debts...." (emphasis added)

Therefore, this Court follows the overwhelming weight of authority in holding that the unliquidated value of a legal right to sue on a nondischargeable debt is not included in the "amount that would be paid" under chapter 7, within the meaning of § 1325(a)(4). Thus, the debtor's plan, proposing to pay 70% of ESU's claim, complies with 11 U.S.C. § 1325(a)(4) and § 1325(a)(3). The plan is confirmed as per journal entry filed in this Court on July 8, 1981.

THE FOREGOING CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.