In re Gerald L. VRATANINA and
Michele M. Vratanina, Debtors.

SECURITY INSURANCE COMPANY OF
HARTFORD, Plaintiff,

v.

Gerald L. VRATANINA and Michele M.
Vratanina, Defendants.

Bankruptcy Nos. 81 B 12862, 82 A 0537.

United States Bankruptcy Court,
N. D. Illinois, E. D.

Aug. 18, 1982.

Terrance A. Vaisvilas, McNeela & Griffin, Ltd., Chicago, Ill., for plaintiff.

Leonard Groupe, Groupe, Katz & Popjoy, Chicago, Ill., for defendants.

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action is brought by Security Insurance Company of Hartford (hereinafter referred to as Plaintiff) against the debtors, Gerald and Michele Vratanina, to revoke the confirmation of their Chapter 13 plan, granted by this court on January 22, 1982.

The debtors originally filed their petition for relief under Chapter 13 on October 16, 1981. All of the scheduled debts were unsecured and totaled slightly over $10,000.00. The principal portion of the scheduled debt is a judgment obtained by the plaintiff in the Circuit Court of Cook County, Illinois, against Gerald Vratanina for $8,000.00. The judgment was based on a suit to recover from the debtor a payment which the plaintiff made to the debtor's former employer under an insurance policy. The payment to the employer was to compensate him for losses he sustained as a result of the debtor's conversion of his property.

Under the terms of the confirmed plan, the debtors provided for a 10% repayment of all allowed unsecured claims. The plan is to last for thirty-six (36) months, with payments of $47.00 per month. After fixed expenses and plan payments, the debtors reported a surplus income of $277.77 per month to be applied toward other necessary living expenses. (The debtors have two young children.)

The basic requirements for the confirmation of a Chapter 13 plan are set forth in Section 1325(a), which provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date...

11 U.S.C. § 1325(a) (1979).

In addition, under Section 1324, a party in interest may object to the confirmation of a plan. 11 U.S.C. § 1324 (1979). In the case at bar, the plaintiff contends that it did not file a timely objection to the plan before its confirmation because the debtors fraudulently failed to give the plaintiff notice of the confirmation hearing. Consequently, the plaintiff reasons that Section 1330 mandates a revocation of this court's confirmation of the debtors' Chapter 13 plan.

The debtors claim that the plaintiff failed to receive proper notice due to a typographical error which caused the address of the plaintiff's attorney to be incorrectly listed. Moreover, debtors argue that regardless of whether or not it received actual notice, the plaintiff's rights were not impaired because the plaintiff's claim was adequately listed and the plaintiff had constructive notice of the confirmation hearing. Finally, the debtor contends that this court has already determined that the debtors' plan was filed in good faith when it confirmed the plan.

Based on the allegations made by each party, the issue presented to this court is whether or not the confirmation of the debtors' plan should be revoked. A revocation in this situation depends on whether or not the plan was originally proposed in good faith. In this case, a determination of good faith requires a two-step analysis: (1) whether or not a debtor can discharge 90% of a claim which would be non-dischargeable under Sections 523(a)(4), (6), and (2) if such a claim is dischargeable, whether the payment plan satisfies the good faith requirement of Section 1322(a)(3).

Under Sections 523(a)(4), (6), a discharge under Sections 727, 1141, or 1328(b) does not excuse an individual debtor from any debt for larceny or willful and malicious injury by the debtor to another entity or the property of another entity. Section 1328(a), however, provides:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of the kind specified in section 523(a)(5) of this title.

11 U.S.C. § 1328(a) (1979).

In *In re Rimgale*, 669 F.2d 426, 428 (7th Cir. 1982), the United States Court of Appeals for the Seventh Circuit construed Section 1328(a) to mean that a "Chapter 13 debtor may be discharged from a variety of debts that a Chapter 7 bankrupt remains obligated to pay at the conclusion of a

liquidation." In *Rimgale*, a judgment was entered against the debtor for intentionally converting a widow's insurance proceeds for his own use. Subsequently, the debtor filed a petition for relief under Chapter 13, and a plan was confirmed which effectively discharged a sizeable portion of the judgment. The widow then brought suit claiming that since the debt was non-dischargeable under Chapter 7, it should also be non-dischargeable under Chapter 13. The court, however, held that the provisions of Section 1328(a) mandate that the debtor can effectively discharge a debt non-dischargeable under Chapter 7, subject to the good faith provisions of 11 U.S.C. § 1325. *Accord, In re Syrus*, 12 B.R. 605 (Bkrtcy.D.Kan.1981) (student loan is dischargeable under Chapter 13 even though non-dischargeable under 11 U.S.C. § 523(a)(8)).

Plaintiff, in the case at bar, argues that the 10% payment plan violates the provisions of Section 1325(a)(4), which states that the value of the property being distributed must be at least the same as that under a Chapter 7 liquidation.

■ Although it is true that the total of the payments under a plan, discounted to present value, must not be less than the amount the creditor would receive in a straight liquidation, non-dischargeable debts are often not fully satisfied even under a Chapter 7 liquidation. More important, Section 1325(a)(4) should not be construed to permit a creditor with a non-dischargeable debt from blocking a Chapter 13 plan. *Rimgale*, 669 F.2d at 430. *Accord, In re Syrus*, 12 B.R. 605, 608 (Bkrtcy.D.Kan. 1981). Consequently, this court finds that the debtors' 10% payment plan does not violate Section 1325(a)(4).

Since the controlling precedent in *Rimgale* has established that a non-dischargeable claim under Chapter 7 can be effectively discharged under Chapter 13, the remaining issue to be addressed is what constitutes "good faith" under a Chapter 13 payment plan. Section 1325(a)(3) states that a plan shall be confirmed if the plan has been proposed in good faith and not by any means forbidden by law.

The courts in interpreting this provision have reached various conclusions. Some courts have rejected minimum payment plans. *In re Burrell*, 6 B.R. 360 (D.C.N.D. Cal.1980) (court rejected Bankruptcy Judge's ruling which required a minimum 70% payment plan to qualify for discharge). Other courts have rejected plans which debtors argued constituted their "best efforts." *In re Kull*, 12 B.R. 654, 659–60 (D.C.S.D.Ga.1981), *citing In re Heard*, 6 B.R. 876 (Bkrtcy.W.D.Ky.1980) (best efforts on the part of the debtor should be rejected as the controlling factor behind the statutory terminology of good faith). Although not conclusive, many courts have found best efforts to be an important factor in determining good faith. *See In re Slade*, 15 B.R. 910, 912 (Bkrtcy. 9th Cir. 1981) (best efforts is a significant indication of good faith). Thus, a "comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal. . . ." *In re Terry*, 630 F.2d 634, 635 (8th Cir. 1980).

Recognizing the difficulty of adopting a policy to aid in determining whether or not a plan was presented in "good faith," the *Rimgale* court adopted the analysis used by the court in *In re Burrell*, 6 B.R. 360 (D.C. N.D.Cal.1980):

> The correct approach * * * is to treat issues of substantiality and best effort as elements of good faith. Unless the courts have discretion to consider such factors, the danger exists that Chapter 13 plans become shams that would emasculate the safeguards that Congress has included in Chapter 7 to prevent debtor abuse of the bankruptcy laws. The courts retain discretion to prevent such abuse, and that discretion can be exercised effectively through a meaningful interpretation of the good faith requirement of § 1325(a)(3). In each case, the bankruptcy court must consider the debtor's entire circumstances to determine whether his plan proposes to make meaningful pay-

ments to unsecured creditors. In making that determination, the courts should be mindful of the fact that the unsecured creditors must rely on the court to give meaning to the congressional intent that they receive substantial payments. Within these guidelines, the courts should proceed on a case-by-case basis.

*In re Burrell,* 6 B.R. at 366, *quoted in Rimgale,* 669 F.2d at 432.

To further aid in implementing the above analysis, the *Rimgale* court listed several factors that Bankruptcy Judges should consider in determining whether or not a plan is being proposed in good faith. The factors mentioned were:

(1) Does the proposed plan state [the debtor's] secured and unsecured debts accurately?

(2) Does it state [the debtor's] expenses accurately?

(3) Is the percentage of repayment of unsecured claims correct?

(4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?

(5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors,"

■ Applying those factors to the case at bar, this court holds that the debtors satisfy all of the above-mentioned tests for good faith. The debtors' plan accurately stated all outstanding debts. This is evidenced by the absence of any claims by creditors disputing the scheduled debts. Furthermore, the expenses, percentage of repayment, and scheduled income also were accurately listed. Finally, there have been no deficiencies in the plan, and the debtors have not attempted to mislead the bankruptcy court.

Whether or not the plan indicates a fundamental fairness in dealing with creditors is a more difficult question. The plan as confirmed would represent only a 10% repayment of the scheduled unsecured claims, leaving surplus income of $277.00 per month for the debtors. Plaintiff argues that this does not constitute the requisite meaningful effort on the part of the debtors.

Although the debtors project surplus income after plan payments and monthly fixed expenses, this court does not find it violates fundamental fairness. The debtors have two children, both under the age of two. Thus the debtors' projection of monthly expenses could be subject to a wide variance due to items such as medical bills and clothing for their children. The purpose behind Chapter 13 is to provide debtors with a meaningful opportunity to rehabilitate. *See In re Taddeo,* 9 B.R. 299, 303 (Bkrtcy.E.D.N.Y.) (pervasive theme of Chapter 13 is debtor rehabilitation) *aff'd,* 15 B.R. 273 (E.D.N.Y.1981) *aff'd,* 685 F.2d 24 (2d Cir. 1982). *See also In re Davis,* 15 B.R. 22, 24 (Bkrtcy.D.Kan.) (recognizing "the overriding rehabilitative purpose of Chapter 13") *aff'd,* 16 B.R. 473 (D.Kan.1981). Consequently, a higher percentage of repayment from the debtors in this case would hinder their efforts to economically rehabilitate.

■ Plaintiff further argues that the debtors should have separated their claim from other unsecured claims. However, this court agrees with the court's approach in *In re Syrus,* 12 B.R. at 608, which stated that a "non-dischargeable debt . . . can be compromised in the same manner as other unsecured claims."

Accordingly, this court holds that the debtors' plan was proposed in good faith and rejects plaintiff's claim for revocation of the debtors' plan confirmed on January 22, 1982. The debtors are to furnish a draft order in accordance with this opinion within five (5) days.*

* This decision is entered in compliance with the stay of enforcement until October 4, 1981 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the General Order of the United States District Court for the Northern District of Illinois (July 14, 1982), and the decision of the United States Court of Appeals for the Seventh Circuit in *Farmers Union Central Exchange, Inc. v. Hertz,* No. 82–2211 (7th Cir. August 13, 1982).