**In the Matter of Gregory Erle STRONG Mary Margaret Strong, Debtors.**

**Bankruptcy No. 81–31388.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Jan. 7, 1983.

Joseph D. Bradley, South Bend, Ind., for debtors.

John D. Krisor, South Bend, Ind., for objector/creditor.

J. Richard Ransel, Mishawaka, Ind., for trustee.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

Debtors herein filed a joint petition and plan under Chapter 13 on May 11, 1982. It was a conversion from a Chapter 7 filing made earlier. The plan was objected to by an unsecured creditor, Fidelity Investment, Inc., on June 10, 1982, at the first meeting of creditors. (One other objection was made, but was later withdrawn, and is no longer under consideration.) The plan was amended on July 22, 1982, but the objection applies as well to the amended plan. A hearing on the objection was held on July 29, 1982. Both sides were given time to file briefs and have done so. The matter was taken under advisement on October 6, 1982.

The court, in making the following findings, has considered all the pleadings, briefs, orders and memoranda filed in this case from its inception.

■ Confirmation of a Chapter 13 plan is mandatory if it meets the requirements of § 1325(a).[1] An unsecured creditor may object, but the plan may be confirmed over his objection.

---

1. 11 U.S.C.A. § 1325 (West 1979).

Objector here claims that the Debtors' plan lacks good faith, a requirement of § 1325(a)(3).[2] Objector first questioned the plan's good faith on the grounds that:

1. Some of the debtors' debts would not be dischargeable in a Chapter 7 proceeding

2. Its debt was of this type

3. It would receive less under this plan that it would have under a Chapter 7 liquidation. (Objection, filed June 10, 1982.)

The first two grounds fail to state any valid objection under the Code. Chapter 13, in § 1328(a)[3], allows the discharge of debts that would not be dischargeable under a Chapter 7 filing. This was one of the incentives Congress added when it rewrote the old Chapter XIII into Chapter 13. Some plans submitted under Chapter 13 may seem an abuse of its generous discharge provisions, and have troubled the courts. As the discharge of debts in a Chapter 13 that would not be dischargeable under a Chapter 7 proceeding is provided for by the law, however, such discharge cannot be a violation of good faith. *See, e.g., In re Rimgale,* 669 F.2d 426, 428 (7th Cir.1982), and *In re Prine,* 10 B.R. 87, 89 (Bkrtcy.D.Idaho 1981). The *Rimgale* court was dealing with a debt for fraudulent and malicious conduct, and did not find the nature of the debt was a bar to finding good faith on the part of the debtor. Rather, the court recommended an examination, on a case-by-case basis, of the entire circumstances of each debtor.

The third ground of the original objection, that an unsecured creditor would receive less under this Chapter 13 plan than it would in a liquidation, is a valid ground: if such were the case, the plan would violate § 1325(a)(4).[4] However, this ground disappears in the Objector's supporting memorandum: "All parties have received virtually the same thing under the proposed plan as they would have received in a Chapter 7

liquidation." (Objector's Memorandum filed June 25, 1982, p. 7.) Further, Debtor's Reply Memorandum of July 9, 1982, at 3–4, supplies figures showing that in a Chapter 7 liquidation the unsecured creditors would receive less than 2.5% of their allowed claims. As even Class 2 unsecured creditors under the proposed plan will receive 3% of their claims, the requirement of § 1325(a)(4)[5] is met by this plan. The objecting creditor is in Class 1, and the proposed plan would offer these creditors 15% of their claims.

Secured creditors are to receive their collateral. This satisfies the requirement of § 1325(a)(5),[6] and no secured creditors have objected.

Unsecured creditors are grouped into two classes. The first group will receive 15% of its allowed claims, and the second group 3%. Dividing the unsecured creditors into classes is permissible under § 1322(b)(1)[7] if the claims are not "substantially similar," and such classifying can even be found to show a debtor's "fundamental fairness" in dealing with its creditors. *See Rimgale, supra,* 669 F.2d at 433 n. 22, and *In re Sanders,* 13 B.R. 320 (Bkrtcy. D.Kan.1981), saying that dischargeable and non-dischargeable debts are not "substantially similar." No percentage of repayment is given in § 1325 as evidence of good faith, and the majority of courts have used this flexibility in the law to judge each Chapter 13 plan on its own facts. *See, e.g.,* the "Appendix of Relevant Decisions (B)," in *Matter of Scher,* 12 B.R. 258, 281 (Bkrtcy. S.D.N.Y.1981).

Debtors in this case have moved to Fairbanks, Alaska, since their original filing. They amended their plan to record the consequent changes in their expenses and income. Their Chapter 13 Statement shows that they will have $200.33 a month disposable income above expenses. They propose

---

**2.** *Id.* § 1325(a)(3).

**3.** *Id.,* § 1328(a).

**4.** *Id.* § 1325(a)(4).

**5.** *Id.*

**6.** *Id.* § 1325(a)(5).

**7.** *Id.,* § 1322(b)(1).

to pay $200 a month into the plan over five years. If their expense and income figures are as accurate and reasonable as they can make them, the fact that they are contributing the whole of their disposable income to the plan, and will do so for the maximum allowable period, would establish the good faith of their plan. Thus we must consider whether their plan's figures are both accurate and reasonable.

Objector characterizes the debtor's statement as inaccurate because of overstatement of some expenses. He specifically points to the expenses for medical and dental care, transportation, haircuts, and housing.

The court finds that the housing expenses listed, given the high cost of living in Fairbanks, are not unreasonable. The cost of living could also explain the figures for transportation ($120 a month) and haircuts for the family, although the court agrees with Objector that $60 a month for haircuts for six people, four of whom were children under eight at the time of filing and one of whom was not yet born at that time, is high. If this were the only expense that seemed overstated, the plan would not necessarily be questioned: a family with four children may have unexpected expenses. *See, e.g., In re Vratanina*, 22 B.R. 453 (Bkrtcy.N.D.Ill.1982). However, other items on debtor's budget include: $100 a month for medical and dental expenses, even though most of these will be covered by an employer plan; $25 a month for "miscellaneous;" $25 a month for child care; $35 a month for laundry; $25 a month for books and newspapers; $15 a month for "dues;" $550 a month for food; $130 a month for clothing; $70 a month for recreation. The "wide variance" in expenses that a family may experience due to having small children, as referred to in *Vratanina, supra,* at 456, would be more than adequately covered by this monthly budget. None of the family has special medical problems. The youngest will not be in need of dental care, or $10 monthly haircuts, for most of the life of the plan.

The monthly expenses of these debtors are considerably higher than those of other Chapter 13 debtors examined by this court, even with allowance made for the higher cost of living in Alaska. While the spirit and purpose of Chapter 13 include rehabilitation of the debtor and do not insist that he be, as counsel for the Objector wishes, the "epitome of repentance," a debtor with a monthly net income of $3,300.33 (gross monthly income of $5,166.66) who offers only $200 a month to creditors with debts totalling over $88,000, while he spends more than $100 a month on entertainment, seems too far outside that spirit and purpose to be in good faith. We note that debtors here appear to have acquired their unsecured debt by the unwise use of credit. Much of it is due to unsecured loans of money and overdrawn bank accounts. We question whether their rehabilitation is best accomplished by a plan allowing them to discharge debts of over $88,000 at a maximum of 15% while pursuing a fairly unrestricted lifestyle.

In regard to the accuracy of their statement, we note that debtors' rent is understated, according to their contract, by $200 a month (their attorney also points this out). They are making payments of $200 a month on a loan for moving expenses, but these payments will last for only 48 months, so that in the last 12 months or more of the plan their income will be $200 a month higher, even if they have no increases in salary. Their "car and license payments" are listed as being $300 a month. Presumably their car payments will not last the life of the plan, as the car was purchased in January, 1981, for $6,000.

For the above reasons, we do not find that the plan's expenses and income figures are as reasonable and accurate as they should be to satisfy the good faith requirement of Chapter 13.[8]

Therefore, confirmation of the plan as it stands is DENIED, without prejudice to the submission of an amended plan, if debtors should wish to amend it.

SO ORDERED.

---

8. *Id.,* § 1325(a)(3).