**In re Marshall FARLEY, Debtor.**

**Bankruptcy No. 89–05445–H13.**

United States Bankruptcy Court,
S.D. California.

April 17, 1990.

Alonzo L. Stevens, for debtor.

---

David Skelton, Harry Heid, Chapter 13 Trustee.

John C. Edwards, for plaintiffs.

## ORDER ON CONFIRMATION

PETER W. BOWIE, Bankruptcy Judge.

Debtor filed his Chapter 13 petition on July 17, 1989. In his Statement he listed no secured obligations to be paid through the plan, and $46,952 in unsecured debt. Of that amount, $34,200 represented judgments arising from injuries and property damage from a vehicle accident while debtor was under the influence of alcohol. Debtor proposed to pay the trustee $150 per month with a dividend to unsecured creditors of 11%. The judgment creditors objected to confirmation of the debtor's plan, asserting it was not filed in good faith and that there was disposable income not committed to fund the plan.

This Court has jurisdiction under 28 U.S.C. § 1334 and General Order No. 312-D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

Debtor's original budget listed net income of $1,700 and expenses of $1,520. Among those expenses, debtor listed $330 for transportation (including auto insurance), $100 for miscellaneous, $40 for recreation, and $30 excess per month over the proposed plan payment. Debtor subsequently amended his budget to show his current actual income and expenses. His net income was reduced to $1,532, and his expenses were reduced to $1,379, with no allowance for recreation or miscellaneous, and $3 excess per month. There is no evidence to establish that the debtor's figures are in error. This Court is compelled to conclude that debtor has committed all disposable income to fund his plan, which he has since interlineated to increase the dividend to unsecured creditors to 15%.

The central issue is whether debtor's plan is filed in good faith inasmuch as debtor seeks to pay only 15% to unsecured creditors and to discharge the balance of $34,200 in judgments which would not be dischargeable in a case brought under Chapter 7. The judgment creditors argue that the plan is not offered in legal good faith because over 70% of the unsecured debt provided for in the plan would be nondischargeable in a Chapter 7. Yet, they argue, debtor seeks the "superdischarge" of a Chapter 13 while only paying a nominal amount, 15%, which amounts to just over $7,000 on debt in excess of $46,000.

Judgment creditors cite *In re Warren*, 89 B.R. 87. (9th Cir. BAP 1988) to support their position. *Warren* held that "good faith" is a separate test from "best effort." In *Warren*, the debtor initially filed under Chapter 7 and listed a judgment owed to his employer from an alleged embezzlement. The employer filed an adversary proceeding objecting to the dischargeability of the debt, and the debtor converted his case to one under Chapter 13. Debtor in that case listed approximately $3,500 in priority debt and almost $45,000 in unsecured debt, approximately $41,000 of which was the judgment. Warren proposed to pay the priority debt in full over 36 months, plus a dividend of about 2% to unsecured creditors, for a total distribution of about $5,400, including administrative expenses. By way of comparison, in the instant case Farley has no secured or priority debt to be paid through the plan, but would pay administrative expenses and just over $7,000 to unsecured creditors. Farley's plan would run approximately 55 months.

*Warren* holds that "the debtor has the burden to establish good faith, which has been characterized as 'especially heavy' when a 'superdischarge' is sought." 89 B.R. at 93. If an objection to confirmation is filed, the debtor must do more than simply present a plan for payment. A debtor must present "meaningful testimony relative to his good faith." 89 B.R. at 91.

Drawing on other decisions, *Warren* counsels courts concerning their role in making "a considered assessment of the debtor's good faith." 89 B.R. at 90.

"The determination with which the bankruptcy court is entrusted under § 1325(a)(3) is not a ministerial one. Like any judicial determination which a bankruptcy court is called on to make during the course of a proceeding, it calls for the exercise of the Court's informed and independent judgment."

*Id.* Similarly, the court observed:

"It should be noted here that Chapter 13 provides that the bankruptcy judge shall preside over confirmation proceedings. If confirmation depended entirely upon arithmetical computations or the absence of illegal activity in the case, there would be no need for a judge. Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts."

*Id.* The difficulty for debtors and courts alike, however, is to define what facts are sufficient to establish good faith. Without some definition, an exercise of discretion could be arbitrary and an abuse. The *Warren* court has listed some factors which courts have considered "as guidelines for determining good faith on a case-by-case basis...." They are:

1) The amount of the proposed payments and the amounts of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

89 B.R. at 93. Looking at each of the factors listed, this Court concludes that debtor has satisfied 1, 3, 4, 5, 6, 9 and 11. Debtor has failed to offer evidence on 2 and 10. There are no special circumstances favoring the plan, such as inordinate medical expenses, and it is a given that the bulk of the debt to be discharged upon satisfactory performance of the plan is debt which would not be dischargeable under Chapter 7. Therein lies the core of the problem.

Section 1325 of Title 11, United States Code, sets out the requirements which a plan must meet to be confirmed under Chapter 13. Separate from the good faith requirement in 1325(a)(3) is a requirement that:

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; ....

Section 1325(a)(4). While, of course, it is true that in a liquidation of Farley's estate these judgment creditors would receive nothing because Farley has no assets which are non-exempt, they would still have a full judgment which had not been discharged and on which they could seek collection from Farley's post-petition income. Under Chapter 13, however, the debt could be discharged after payment of little or nothing, for § 1328(a) excepts from discharge only long term debt and alimony or support obligations. Nevertheless, courts have routinely rejected the argu-

ment that creditors owed obligations which are non-dischargeable under Chapter 7 must be paid through a Chapter 13 plan at least what they could collect after a Chapter 7 discharge. *In re Klein,* 57 B.R. 818, 820 (9th Cir. BAP 1985); *In re Rimgale,* 669 F.2d 426, 430 (7th Cir.1982); *In re Vratanina,* 22 B.R. 453 (Bankr.N.D.Ill. 1982); *Matter of Marlow,* 3 B.R. 305, 307 (Bankr.N.D.Ill.1980).

As the *Warren* court noted:

Chapter 13 was designed and enacted as a vehicle for voluntary repayment with future income through composition and/or extension of debts. (Citations omitted.)

89 B.R. at 91. The court continued:

With reference to the broader discharge recommended in Chapter 13 as opposed to Chapter 7, the Commission noted:

If the debtor wants to pay his debts pursuant to a plan, and if creditors are willing to go along, he should be allowed to do so. The fact that a discharge would not be available in a liquidation case should furnish a greater incentive for the debtor to perform under the plan.

89 B.R. at 91–92. Quoting from Chapter 13 legislative history, the *Warren* court reiterated:

From the perspective of the House of Representatives, Chapter 13 was designed to accomplish the following:

The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period.... The benefit to the debtor of developing a plan of repayment under Chapter 13, rather than opting for liquidation under Chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under Chapter 13, the debtor may retain his property by agreeing to repay his creditors. Chapter 13 also protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

89 B.R. at 92.

It is hard for this Court to fathom how any of the above-quoted congressionally designed purposes of Chapter 13 are advanced by allowing a debtor to discharge in Chapter 13 with little or no payment debts he could not discharge in Chapter 7. There is no benefit to those creditors; the debtor has not met his obligations to his creditors so does not have that fact as a basis for retaining his pride. Moreover, this debtor has no non-exempt assets to preserve, so lacks that incentive, as well. This Court has not been shown any evidence that in current times Chapter 13 debtors who perform under low percentage plans are viewed as better credit risks. Indeed, this Court suspects that the credit industry is more interested in the six year bar from refiling in such a case. 11 U.S.C. § 727(a)(9).

A pressing question is why did the Congress not address the conflict between the avowed purposes of Chapter 13 and the possible result that creditors with obligations not dischargeable under Chapter 7 could have those debts discharged under Chapter 13 for little or no payment. Perhaps the Congress did not have such creditors in mind when it considered that " 'partial repayment' of unsecured debts under Chapter 13 is preferable to almost certain nonpayment of those debts in 'straight bankruptcy' where 'both the debtor and his creditors are the losers.' " 89 B.R. at 91. However, it has been pointed out that the Congress was aware that treatment of debts nondischargeable under Chapter 7 would be different under Chapter 13. *In re Webre,* 88 B.R. 242, 246 (9th Cir. BAP 1988).

For all the foregoing reasons, it is extremely tempting to conclude that the Congress did not intend that otherwise non-dischargeable debts should be discharged through a Chapter 13 plan that pays to those creditors substantially less than all of those obligations. Such a result does not satisfy the avowed purposes of Chapter 13. Even more importantly, such a result is directly contrary to the clearly expressed congressional intent embodied in 11 U.S.C. § 523(a), which establishes the non-dischargeability of those debts under Chapter 7.

Indeed, this Court would conclude that Chapter 13 does not permit the discharge of otherwise nondischargeable debts unless the debtor's plan provides for payment of those debts, except that this Court believes the current state of the law compels otherwise. Specifically, the Congress knew how to provide for the nondischargeability of certain debts under Chapter 13 because it did so provide in § 1328(a). The debt in the instant case is neither long term debt nor alimony or support. The canons of statutory construction require the conclusion that the inclusion of those debts as excepted from a Chapter 13 discharge means that other debts nondischargeable under Chapter 7 are dischargeable under Chapter 13. Similarly, the Congress could have provided a priority status to this group of creditors. See, e.g., 11 U.S.C. § 1322(a). Also, the Congress expressly provided that debts non-dischargeable in Chapter 7 are also not discharged in a hardship discharge under Chapter 13. 11 U.S.C. § 1328(b). As much as this Court believes that debts nondischargeable under Chapter 7 should be discharged under Chapter 13 only if paid through the plan, that is for the Congress to provide, not the judiciary.

What remains then, is resolution of the good faith analysis required by *Warren* and § 1325(a)(3). As noted, debtor has failed to offer evidence on his employment history, his ability to earn, and the "likelihood of future increases in income." Similarly, he has not offered evidence on his motivation or sincerity in seeking Chapter 13 relief, although those can be inferred. The fact remains the debtor seeks to do what the law appears to permit him to do. He has not manipulated the Bankruptcy Code and he is making his best effort under the proposed plan. In this Court's view, a finding of a lack of legal good faith has to be grounded on something different than the fact that the Court does not believe the result is fair to creditors who will receive substantially less under Chapter 13 than they would have had the potential of collecting after a Chapter 7 discharge.

Nor is the Court aided by the concept advanced by some courts that confirmation of a Chapter 13 plan should be denied when it is nothing more than a "thinly veiled Chapter 7." It is hard to imagine a Chapter 13 more "thinly veiled" than one that proposes to pay unsecured creditors 0%, or 1%. Yet, in this circuit, a Chapter 13 plan may so provide. *In re Goeb,* 675 F.2d 1386 (9th Cir.1982). While "substantial repayment" was an important factor in earlier cases, e.g., *In re Burrell,* 6 B.R. 360 (N.D. Cal.1980), its significance was diminished in the Ninth Circuit in *In re Goeb,* 675 F.2d 1386 (9th Cir.1982). As recently reiterated by the Bankruptcy Appellate Panel, "there is no substantial repayment requirement in the Ninth Circuit." *In re Porter,* 102 B.R. 773, 776 (9th Cir. BAP 1989).

In summary, and for the reasons set out above, this Court believes that debtors should not be able to discharge through Chapter 13 debts which they could not discharge pursuant to Chapter 7, unless those debts are paid. It is a glaringly contradictory proposition that creditors owed obligations nondischargeable under Chapter 7 can be forced to take less under Chapter 13 while the theoretical premise remains that the debtor receives the benefit of the "superdischarge" because he is paying something he would not pay under Chapter 7 (a premise which itself is fallacious in the face of a 0% plan). Indeed, it is a cruel irony that creditors favored over other unsecured creditors by § 523(a) because the debts owed them are not dischargeable under Chapter 7 are relegated to taking much less in Chapter 13 while the less favored other unsecured creditors may receive something they would not receive in a

Chapter 7 proceeding. There may be an argument that classifying debts nondischargeable in a Chapter 7 with other unsecured debts is discriminatory because of the statutory preference accorded those debts under § 523(a). See, e.g., *In re Rimgale*, 669 F.2d 426, 433 at n. 22 (7th Cir. 1982). But see *In re Vratanina*, 22 B.R. 453, 456 (Bankr.N.D.Ill.1982). If so, that argument has not been raised in the instant proceedings.

Notwithstanding the convictions of this Court about the inequitable result which obtains in a case such as this, this Court is compelled to conclude that the plan as proposed should be confirmed. Debtor has met most of the factors enumerated in *Warren*. This Court's dissatisfaction with the result is not a sufficient ground to support a conclusion that the debtor's plan is not proposed in good faith. It is for the Congress to redress what this Court perceives as a flaw in the statutory scheme of Chapter 13.

Accordingly, it is hereby ordered that debtor's proposed plan, as interlineated, shall be, and hereby is, confirmed, subject to the conditions that debtor shall, commencing on or before May 15, 1990 and each and every six (6) months thereafter throughout the duration of the plan, file with the Court and serve on the Chapter 13 Trustee and on counsel for the judgment creditors a declaration of the debtor, made under penalty of perjury, which states the name, address and phone number of each employer of the debtor during the preceding six (6) months, the duration of each period of employment, and the reason(s) for any employment terminating, or including less than forty (40) work hours per 5 day week. The debtor shall attach to each such declaration every pay statement for pay received during the preceding six (6) months. The pay statement shall reflect all gross pay, including overtime, and shall show all deductions taken from gross pay, all allotments or other monies withheld or transferred, including insurance premiums or retirement or savings contributions, the number of exemptions claimed for federal and state tax purposes, and shall show net pay. To the extent pay statements provid-

ed by the employer do not include the information required hereby, the debtor shall provide that information in the body of his declaration. The information thus provided may serve as a basis for a motion to modify the debtor's plan brought either by creditors or the Chapter 13 Trustee to the extent the information establishes changed circumstances which would support a modification pursuant to 11 U.S.C. § 1329. Failure to timely file and serve the required declaration and attachments may constitute a basis for dismissal of this proceeding for failure to comply with this order.

IT IS SO ORDERED.